BIA
Connelly, IJ
A047 113 663

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of September, two thousand eighteen.

PRESENT:
> RALPH K. WINTER,
> JOHN M. WALKER, JR.,
> CHRISTOPHER F. DRONEY,
> *Circuit Judges.*

---

**DAMION ANTHONY CAMPBELL, AKA DAMIEN A. CAMPBELL, AKA DAMON CAMPBELL,**
>*Petitioner*,

v.                                                                                      17-26

**JEFFERSON B. SESSIONS III, UNITED STATES ATTORNEY GENERAL,**
>*Respondent*.

---

FOR PETITIONER:    Andrew Boccio, Henrik J. van Hemmen, *on the brief*; Jon Romberg, Of Counsel; Seton Hall University School of Law, Center for Social Justice, Newark, NJ.

FOR RESPONDENT:   Chad A. Readler, Acting Assistant Attorney General; Anthony P. Nicastro, Assistant Director; Sheri R. Glaser, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

CERTIFIED COPY ISSUED ON 09/21/2018

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the case is TRANSFERRED to the United States District Court for the Western District of New York pursuant to 8 U.S.C. § 1252(b)(5)(B) and the petition is HELD IN ABEYANCE.

Petitioner Damion Anthony Campbell seeks review of a November 30, 2016, decision of the BIA affirming a July 14, 2016, decision of an Immigration Judge ("IJ") ordering his removal to Jamaica. *In re Damion Anthony Campbell,* No. A047 113 663 (B.I.A. Nov. 30, 2016), *aff'g* No. A047 113 663 (Immig. Ct. Batavia July 14, 2016). He argues that he derives citizenship from Jamal Robinson as his biological son, or as a result of his legitimation under Jamaican law. We assume the parties' familiarity with the underlying facts and procedural history in this case.

## I. Statutory Framework

We retain jurisdiction to review Campbell's citizenship claim despite the convictions underlying his removal order. *See* 8 U.S.C. § 1252(a)(2)(C), (D); *Gil v. Sessions*, 851 F.3d 184, 186 & n.1 (2d Cir. 2017). We review the question of derivative citizenship *de novo*. 8 U.S.C. § 1252(b)(5)(A); *Gil*, 851 F.3d at 186.

The INA governs judicial review of U.S. citizenship or nationality claims. It provides that a court of appeals "shall" decide a nationality claim if the court "finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented." 8 U.S.C. § 1252(b)(5)(A). We must, however, transfer a petition to district court for an evidentiary hearing and a declaratory judgment on a citizenship claim if "a genuine issue of material fact about the petitioner's nationality is presented." *Id.* § 1252(b)(5)(B). In determining whether a petitioner has raised a material factual dispute, we apply "the same principles employed on a [Federal Rule of Civil Procedure] 56 motion for summary judgment." *Duarte-Ceri v. Holder*, 630 F.3d 83, 91 (2d Cir. 2010); *see also Agosto v. INS*, 436 U.S. 748, 754 (1978) ("We may reasonably assume that, in using the language from Rule 56 as the standard for granting *de novo* district court hearings on citizenship claims, Congress intended the language to be interpreted similarly to that in Rule 56.").

The INA also sets the terms by which a child may claim U.S. citizenship through his parents. A child derives U.S. citizenship from his parent(s) when (1) one or both parents are U.S. citizens by birth or naturalization, (2) the child is under 18, and (3) the child lives in the United States as a lawful permanent resident ("LPR") in the legal and physical custody of the U.S. citizen parent. 8 U.S.C. § 1431(a). For citizenship purposes, "child" is defined as:

> [A]n unmarried person under twenty-one years of age . . . [who is] legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere, and, . . . a child adopted in the United States if such legitimation or adoption takes place before the child reaches the age of 16 years . . . and the child is in the legal custody of the

2

legitimating or adopting parent or parents at the time of such legitimation or adoption.

8 U.S.C. § 1101(c)(1).

**II. Burden of Proof**

In removal proceedings, the Government bears the burden of establishing deportability by "clear and convincing evidence." 8 U.S.C. § 1229a(c)(3)(A). Because Campbell conceded that he was born in Jamaica, however, he faces a rebuttable presumption that he is not a U.S. citizen. *See In re Rodriguez-Tejedor*, 23 I. & N. Dec. 153, 164 (B.I.A. 2001) ("In deportation proceedings, evidence of foreign birth gives rise to a rebuttable presumption of alienage, and the burden shifts to the respondent to prove citizenship."); *U.S. ex rel Barilla v. Uhl*, 27 F. Supp. 746, 747 (S.D.N.Y. 1939), *aff'd*, 108 F.2d 1021 (2d Cir. 1940) (per curiam). We have repeatedly held that a foreign-born petitioner has the burden to establish his U.S. citizenship. *Gil*, 851 F.3d at 188 ("The burden falls on [petitioner] to show he met [the legitimation] requirement."); *Nwozuzu v. Holder*, 726 F.3d 323, 332 (2d Cir. 2013) (recognizing "that the alien applicant bear the burden of establishing his eligibility for citizenship"); *Grant v. U.S. Dep't of Homeland Sec.*, 534 F.3d 102, 105 (2d Cir. 2008) ("[A]n alien born out of wedlock . . . must show, at a minimum, that he has been legitimated in order to achieve citizenship based on the father's citizenship."). That said, neither we nor the Supreme Court has clarified the quantum of evidence a petitioner must produce in order to meet that burden, *i.e.*, whether a petitioner must establish his derivative citizenship by a preponderance of the evidence, or a lower standard.

The Government argues that we should adopt a preponderance of the evidence standard because that is the standard used in relevant regulations. *See* 8 C.F.R. § 341.2(c) (to obtain a certificate of U.S. citizenship, "[t]he burden of proof shall be upon the claimant . . . to establish the claimed citizenship by a preponderance of the evidence."). Campbell argues, however that the court should follow the Ninth Circuit's burden-shifting framework, which requires, after "the [G]overnment offers evidence of foreign birth," only "substantial credible evidence" of U.S. citizenship to rebut the presumption of alienage and shift the burden back to the Government "to prov[e] the [petitioner] removable by clear and convincing evidence." *See Mondaca-Vega v. Lynch*, 808 F.3d 413, 419 (9th Cir. 2015)(internal quotation marks omitted), *cert. denied*, 137 S. Ct. 36 (2016); *see also Rose v. Sessions*, 679 F. App'x 557, 559 (9th Cir. 2017) (summary order) (applying *Mondaca-Vega*'s burden-shifting framework and concluding that "[t]he district court's ruling that the evidence was equally balanced dictates our conclusion that the [G]overnment failed to prove by clear, unequivocal, and convincing evidence that [petitioner] is not a citizen."). Campbell argues that under the Ninth Circuit's burden-shifting framework he has met his evidentiary burden.

We do not, however, resolve the issue of the appropriate burden of proof for Campbell's claim today because, as discussed below, 8 U.S.C. § 1252(b)(5)(B) requires us to transfer this case to the District Court for an evidentiary hearing. *See Garcia v. USICE (Dep't of Homeland Sec.)*, 669 F.3d 91, 98 (2d Cir. 2011) (transferring for resolution of a factual dispute regarding citizenship, noting that new evidence had been filed, and stating that it was for the district court to

"weigh the probative value of [petitioner's] and the Government's evidence."); *Ayala-Villanueva v. Holder*, 572 F.3d 736, 740 (9th Cir. 2009)("This court, however, need not weigh the evidence or determine whether the BIA applied the appropriate burden. Instead, we need only determine whether a genuine issue of material fact exists as to Ayala's nationality.").

### III. Campbell's Relationship to Robinson

Campbell first argues that he derives U.S. citizenship as a result of his being Robinson's biological son, but the evidence of his relationship with Robinson is disputed and therefore should first be resolved by the District Court.

Although certain evidence in the administrative record suggests that Michael Campbell is Campbell's biological father and Robinson is Campbell's stepfather, it is not conclusive. First, Campbell's birth certificate does not list a father. Second, Campbell testified as to the issue of whether Jamal Robinson is his father as follows: "[M]y parents told me [Robinson's] my father", and "[Robinson] told me he's my father." He also testified that he referred to Robinson "[a]s dad" and Robinson called him "son," and that his mother "told [him] that [Robinson's his] father." As to whether Michael Campbell was his father, Campbell testified that: "[I] . . . talked to him one or two times . . . but I never really refer to him as like a father," and that he was not aware that Michael Campbell was "ever married to [his] mother."[1] Although the government contends that Campbell admitted in certain documents that Robinson is his stepfather, Campbell disputes the authenticity and reliability of that evidence. Without conclusive or more persuasive evidence of his parentage, the court is left with competing facts, which taken together create a genuine dispute of material fact requiring resolution by the District Court.

### IV. Legitimation Under Jamaican Law

Campbell also argues that he is Robinson's child under Jamaican law. As stated above, a "child" under applicable law includes "a child legitimated under the law of the child's residence or domicile . . . if such legitimation . . . takes place before the child reaches the age of 16 years." 8 U.S.C. § 1101(c). Campbell argues that Robinson is his legitimate father under Jamaican law, the law of his domicile, because Robinson married Campbell's mother before Campbell turned 16 and held himself out as Campbell's father.

Section 7 of Jamaica's 1976 Status of Children Act provides that for the purposes of "succession to property or to the construction of any will or other testamentary dispute" a father-son relationship will be recognized if: "(a) the father and the mother of the child were married to each other at the time of its conception *or at some subsequent time*;" or (b) paternity has been admitted by or established during the lifetime of the father (whether by one or more of the types of evidence specified by section 8 *or otherwise*)," (emphases added); *see also Matter of Cross*, 26 I. & N. Dec. 485, 489 (B.I.A. 2015) ("Jamaican law retain[s] some 'minor statutory distinctions' between children based on the marital status of their parents in order 'to minimize the problems

---

[1] Notably, the IJ never made an express credibility determination, deciding, one way or another, if Campbell's testimony was truthful.

4

associated with determining rights and status in an area where difficulties may arise in identifying the natural father of a child.'" (quoting *Matter of Clahar*, 18 I. & N. Dec. 1, 2 (B.I.A. 1981))). The question of whether Robinson is Campbell's father under Jamaican law turns on the meaning and satisfaction of these provisions. And although the meaning of Jamaican law is a legal question, whether that meaning has been satisfied may well turn on the factual dispute over Campbell's relationship to Robinson. Thus, this claim too will be held pending resolution of the parties' competing accounts by the District Court.

V. Conclusion

Because there is a factual dispute regarding Campbell's relationship to Robinson and the evidence in the record is not conclusive, we TRANSFER the proceeding to the Western District of New York[2] pursuant to 8 U.S.C. § 1252(b)(5)(B) for a determination of citizenship and HOLD IN ABEYANCE this petition for review. The stay of removal previously granted shall remain in place until Campbell's citizenship claim is resolved. Counsel for petitioner shall notify the Clerk of the Court within 14 days of the issuance of a decision from the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

---

[2] Campbell is currently detained at the Buffalo Federal Detention Facility in Batavia, New York, which is located in the Western District of New York.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit